**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Mariafrancesca Gioia,<br><br>                          Plaintiff,<br><br>          -v-<br><br>Teva Pharmaceuticals USA, Inc.,<br><br>                    Defendant. | 2:25-cv-4418<br>(NJC) (SIL) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is the eleventh pro se Complaint filed by Mariafrancesca Gioia in this Court relating to injuries that she allegedly sustained as a result of taking a prescription drug.[1] (Compl., ECF No. 1, ("*Gioia XI*").) Gioia has also filed three motions to proceed in forma pauperis ("IFP"). (IFP Mots., ECF Nos. 2, 7–8.) Defendant Teva Pharmaceuticals USA, Inc. ("Defendant" or "Teva") has requested a pre-motion conference in anticipation of filing a motion to dismiss the Complaint. (Mot. for Pre-Mot. Conf. ("PMC"), ECF No. 10.) Gioia opposes Teva's anticipated motion. (Opp to Mot. ("Opp."), ECF No. 12.)

---

[1]  Gioia's other cases are:

- *Gioia v. Janssen Pharm.,* No. 2:19-cv-4629 ("*Gioia I*"), and *Gioia v. Janssen Pharm.,* No. 2:19-cv-5377 ("*Gioia II*") (together, the "2019 Actions");
- *Gioia v. Janssen Pharm.,* No. 2:23-cv-1187 ("*Gioia III*");
- *Gioia v. SouthEnd Psychiatry*, No. 2:23-cv-1419 ("*Gioia IV*");
- *Gioia v. Patterson, Belknap, Webb & Tyler,* No. 2:23-cv-3353 ("*Gioia V*");
- *Gioia v. Patterson, Belknap, Webb & Tyler,* No. 2:23-cv-8163 ("*Gioia VI*");
- *Gioia v. SouthEnd Psychiatry*, No. 2:23-cv-8164 ("*Gioia VII*");
- *Gioia v. Johnson and Johnson*, No. 2:24-cv-1912 ("*Gioia VIII*");
- *Gioia v. SouthEnd Psychiatry*; No. 2:24-cv-2259 ("*Gioia IX*"); and
- *Gioia v. Johnson and Johnson*, No. 2:25-cv-2810 ("*Gioia X*").

Upon review of the parties' submissions, the Court: (1) grants Gioia's IFP motions for the limited purpose of this Order; (2) dismisses the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) (i)-(ii) and Federal Rule of Civil Procedure 12(b)(6); and (3) orders Gioia to show cause why, under 28 U.S.C. § 1651, a pre-litigation bar should not be entered barring her from filing any further actions, without prior permission from the Court, relating to injuries that she allegedly sustained as a result of taking the drug Adderall (amphetamine dextroamphetamine).

## BACKGROUND

Gioia's litigation history in this Court relating to injuries that she allegedly suffered from her use of the drug Invega is set forth in the Court's Memorandum and Order dated April 19, 2024 (the "Mem. & Order") in the related case *Gioia VIII*, and that history is incorporated here. *See* Mem. & Order, *Gioia VIII*, No. 2:24-cv-1912 (Apr. 19, 2024), ECF No. 14. In dismissing the complaints in *Gioia VI*, *Gioia VII*, and *Gioia IX*, and remanding the complaint in *Gioia VIII* to the New York State Supreme Court, Suffolk County, the Court made clear:

> **Gioia is warned that, if she files another complaint about the same subject matter as Gioia I–IX, including allegations arising from or relating to the medication Invega, the Court will order her to show cause why she should not be barred under 28 U.S.C. § 1651 from filing new civil actions without prior permission from the Court. This warning applies to any complaints filed directly in this Court or properly removed here.**

M&O, 2:24-cv-1912, ECF No. 14 at 23. Undeterred, Gioia filed another IFP complaint against Johnson & Johson relating to the medication Invega (*Gioia X*). After notice and an opportunity to be heard, the Court dismissed the *Gioia X* complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) (i)-(ii) and Rule 12(b)(6) of the Federal Rule of Civil Procedure and entered a pre-litigation injunction as follows:

> For all of [the aforementioned] reasons, the Court now bars Gioia from filing new complaint relating to same subject matter as Gioia I–X, including allegations arising from or relating to the medication Invega, without first seeking leave of court. Any motion for leave to file must be captioned "Application Pursuant to Court Order Seeking Leave to File." Gioia must attach a copy of her proposed complaint and attach a copy of this Memorandum and Order with any such motion. The Clerk of the Court is directed to return to Gioia, without filing, any new complaint from Gioia if it is received without a separate application seeking leave to file.

(*Gioia X*, ECF No. 16 at 22–23.)

### I.       The Complaint[2]

The present Complaint is brought against Teva and relates to the drug Adderall. Invoking this Court's federal question and diversity subject matter jurisdiction, the Complaint alleges that Gioia, a citizen of New York, seeks a damages award for injuries allegedly suffered from her use of the drug Adderall. (*See* Compl. at 7–35.) More specifically, the Complaint contends that a manufacturer-created shortage of the drug caused her injuries because she was unable to obtain it. (*Id*. at 7–9.) The Complaint alleges that the federal claims are brought pursuant to "Federal Antitrust Laws," the "Sherman Antitrust Act," the "Federal Trade Commission Act," "Dodd Frank Wall Street Reform and Consumer Protection Act," "General Consumer Laws," and the "Food, Drug, Cosmetic Act of 1988." (*Id*. ¶ II.A; *id*. at 7.) Gioia alleges that she is a citizen of the state of New York and that Teva is a citizen of the state of New Jersey. (*Id*. ¶¶ II.B.1(a) and 2(b).) For relief, the Complaint demands $12 million from Teva "for Antitrust harm caused by the defendant including severe biopsychosocial disability and exacerbation of ADD/ADHD as well as severing career and financial endeavors and relationships (interpersonal, familial, community)." (*Id*. ¶ II.3.)

---

[2]  Excerpts from the Complaint have been reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

According to the Complaint, Gioia, a "patient prescribed Adderall [] for treatment of a ADD/ADHD diagnosed medical condition requiring continuous pharmaceutical management" was deprived access to that medication for nearly one year starting in 2022, when Teva halted production and distribution of the medication. (*Id.* at 7 ¶¶ 4, 6.) The Complaint alleges that, as a result, Gioia suffered "[s]evere biopsychosocial disability, including medical deterioration, emotional distress, and social impairment" as well as "[l]oss of financial endeavors, including interference with Plaintiff's professional and economic activities." (*Id.* ¶¶ 8(a)–(b).) Further, the Complaint alleges Gioia suffered the "severing of familial and social relationships" as a result of being deprived of Adderall. (*Id.* ¶ 8(c).)

The Complaint also alleges that this action is not Gioia's first against Teva as follows:

> Plaintiff first commenced this lawsuit against Teva Pharmaceuticals about this matter and harm back in 2022 immediately after the occurrence. These prior complaints lacked the correct Cause of Action and Statutes which would allow an individual consumer patient to sue a pharmaceutical company business for holding a medication as it engaged in monopolistic unfair trade practices. Plaintiff's past complaints were based on defendant breaking FDA Regulations and Current Good Manufacturing Practices; however, the nexus needed for patient to bring suit upon an individual pharmaceutical company who caused her Antitrust Harm are instead: Consumer Protection Rights and Antitrust Laws and Shearman Law. Plaintiff had not included these in prior complaints because plaintiff was not aware of them at that time. Upon further research and knowing this nexus that would allow her to bring suit for these acts needed to be found if one existed, plaintiff found such and thereby refiled her Complaint to now include them as her Cause of Action and Federal Statutes allowing her to bring suit upon defendant's actions due to the harm these Antitrust Violations caused her.

(*Id.* at 9, ¶ 3.) The Complaint further alleges:

> Res Judicata and Collateral Estoppel can not apply to this new Complaint given that this new Complaint now includes what was priorly missing (The correct fundamental Statutes and Cause of Action that allow for an individual consumer patient to bring suit on a pharmaceutical company for causing them antitrust harm) because this information was not priorly known to pro-se plaintiff at that

time of filing prior complaints thereby could not have possibly been included or judged in the prior Complaints.

(*Id.* ¶ 4.)[3]

For relief, Gioia seeks an "[a]ward [of] compensatory and consequential damages in an amount of $12,000,000.00 including Treble Damages under Federal Antitrust Law and Antitrust Harm." (*Id.* at 9.)

## II.    Defendant's Pre-Motion Conference Letter

On September 4, 2025, Teva filed a letter requesting a conference concerning its anticipated motion to dismiss the Complaint for failure to state any claim upon which relief may be granted. (*See* PMC.) In the letter, Teva asserts that Gioia's "claims have previously been reviewed and dismissed ***four times*** in prior actions in New Jersey state court—including dismissal on the merits ***with prejudice***—and are thus barred by the doctrine of *res judicata*." (*Id.* at 1 (emphasis in original).)[4]  In addition, Teva asserts that, apart from preclusion, the claims asserted in the Complaint are not plausible because the wholly conclusory allegations lack sufficient factual support. (*Id.* at 1–2.) Indeed, Teva notes that the Complaint does not identify which "Consumer Protection Law" was allegedly violated nor does the Complaint sufficiently identify what Teva allegedly did in violation of those laws or the "Federal Antitrust Laws." (*Id.* at 2.)

---

[3]  Gioia has annexed an additional 25 pages of exhibits to her Complaint including excerpts from various cases and statutes and a summary of damages. (ECF No. 1 at 10–35.)

[4]  Teva also annexed to the PMC Letter copies of the four complaints Gioia filed in the New Jersey Superior Court and the dismissal orders in each of those cases. *See* ECF No. 10-1 to 10-10.

On September 7, 2025, Gioia filed an opposition (the "Opposition") to Teva's letter requesting a pre-motion conference on the anticipated motion to dismiss. (*See* Opp.) In the Opposition, Gioia largely repeats the allegations in the Complaint and provides a litigation history that is belied by the history in the New Jersey state court. (*Id.*)

Gioia also asserts in the Opposition that, as a pro se litigant, she was "not aware of" and did "not have knowledge of" the statutes that would protect her from "Anti-Trust Harm." (*Id.* at 7.) She also recites that she "did not discover these Statutes until after the third Complaint was already filed and that is why they were filed as supporting documents." (*Id.* at 7–8.) Importantly, Gioia acknowledges that she *did* include these claims in her fourth state court complaint. (*Id.* at 8.) Indeed, in explaining that the "prior Complaints against Teva Pharmaceuticals were dismissed from the Court because these Complaints had deficiencies," Gioia acknowledges that she had previously brought suit against "Teva Pharmaceuticals for unexpectedly stopping Adderall production for almost 1 year for their own financial gain. . . ." (*Id.* at 10.) Finally, Gioia asserts that because the relevant statutes "were not known to me before writing the prior Complaint[,] [t]herefor[e], Res Judicata and Entire Controversy Doctrine can not apply and can not be a basis for dismissal of this new Complaint and that is why I am asking for the Judgement based on Res Judicata and Entire Controversy Doctrine to be Reconsidered because the prior Complaints did not include." (*Id.*)

### III.    Relevant State Court Litigation Between the Parties

Teva cites four prior actions between the parties, each filed in the Superior Court of New Jersey (the "State Court"). The Court takes judicial notice of the prior litigation between the parties in New Jersey state court. *See Global Network Communications, Inc. v. City of New York,*

6

458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings."); *see also Dolberry v. Correction Officer Silvernail*, 620 F. App'x 34, 36 (2d Cir. 2015) (finding it proper to take "judicial notice of these publicly filed documents") (summary order); *Johnson v. City of New York*, No. 21-cv-10535, 2023 WL 5629232, at *3 (S.D.N.Y. Aug. 31, 2023) ("Records of prior litigation between the same parties fall within the scope of [the judicial notice] rule.") (citation omitted).

### A.  Gioia v. Teva Pharmaceutical (the "First State Case")

Gioia filed a complaint against Teva, dated March 11, 2023, in which she challenged the alleged "abrupt shortage" of "Adderal [sic] in all its dosages and forms including all generics." (ECF No. 10-1 at 2–3; ECF No. 10-2 at 2; Dkt. No. MRS-L-722-23, Superior Court of New Jersey Law Division: County of Morris.) On November 3, 2023, the State Court granted Teva's motion to dismiss the complaint without prejudice and with leave to file an amended complaint. (*See* ECF No. 10-2 at 2–13.) In dismissing the complaint, the State Court noted that "[t]he complaint does not identify the legal theory or theories for [Plaintiff's] cause of action" and dismissed the complaint without prejudice "because the court cannot identify the cause(s) of action that Plaintiff is attempting to allege in the complaint." (*Id*. at 4, 9, 11.) Gioia did not file an amended complaint.

### B.  Gioia v. Teva Pharmaceutical (the "Second State Case")

On the same day that the First State Case was dismissed, Gioia drafted another complaint against Teva, dated November 3, 2023, and filed on November 9, 2023, alleging that Teva "abruptly stopped manufacturing Adderal [sic] in both generic and name brand forms . . . as well as significantly increasing the online marketing and advertisement which created more new

patients . . . ." (ECF No. 10-3 at 2; ECF No. 10-4 at 2, Dkt. No. MRS-L-2079-23, Superior Court of New Jersey Law Division: Civil Part County of Morris.) The complaint alleged that Teva "showed negligence in its duties and violated statutes including 21 CFR Part 210 and the FDA Modernization Act of 1997 and 2007." (ECF No. 10-3 at 4.) As a result, the complaint alleged that Gioia suffered the "loss of job and car loss of apartment and Relationship/Family congruency" as well as "severe mental anguish and long term (possibly permanent) loss of efficacy level in the treatment of my attention deficit and Psychological trust and stability" for which Gioia sought $10 million in damages. (*Id*. at 2–3.)

Teva moved to dismiss the complaint with prejudice for failure to state a claim for relief. (ECF No. 10-4 at 4.) Gioia opposed the motion, and the Court heard oral argument on August 5, 2024. (*Id*.) By Order dated August 8, 2024, the State Court granted Teva's motion to dismiss the complaint with prejudice. (*See id*. at 2–8.) In dismissing the complaint, the State Court ruled that Teva had no duty to Gioia to ensure that the subject drug was available to her, rendering the negligence claim meritless. (*Id*. at 6–7.)[5]  The Court further ruled that the claims alleged under the Food and Drug Administration Modernization Act and 21 C.F.R. Part 210 failed because "neither provides a private cause of action." (*Id*. at 8.)

### C.  Gioia v. Teva Pharmaceutical (the "Third State Case")

On August 10, 2024—two days after the complaint in the Second State Case was dismissed with prejudice—Gioia drafted another complaint against Teva and filed it on August 29, 2024, in the same New Jersey court, where it was assigned docket number MRS-L-1776-24.

---

[5]  Notably, the State Court also explained that "[f]ederal courts have also declined to impose a duty." (*Id*. at 7 n. 1) (citing *Suthers v. Amgen Inc.*, 441 F. Supp. 2d 478, 479 (S.D.N.Y. 2006); *Hochendoner v. Genzyme Corp.*, 95 F. Supp. 3d 15 (D Mass. 2016)).

(*See* ECF Nos. 10-5 and 10-8.) The complaint in the Third State Case alleged that Teva "knowingly violated several FDA Rules and Regulations that are considered as laws/statutes equivalents for their own selfish gain and while being aware of these laws and regulations Teva's violations of them created an unimaginable [indecipherable] in ADHD medication, especially Adderal [sic] . . . ." (ECF No. 10-5 at 2.) Teva moved to dismiss the complaint, Gioia opposed the motion, and the court heard oral argument. (ECF No. 10-8 at 4.) The court explained that "[a] dismissal with prejudice constitutes an adjudication on the merits as fully and completely as if the order had been entered after trial," and that "[r]es judicata is a term that refers to the doctrine barring relitigation of claims or issues that have already been adjudicated." (*Id.* at 4–5 (cleaned up).) By Order dated January 24, 2025, the court ruled that "Plaintiff's allegations are essentially the same alleged course of wrongful conduct as set forth in Plaintiff's prior Complaints. Accordingly, Plaintiff's Complaint is barred by the doctrine of res judicata as the issues were previously adjudicated." (*Id.* at 5.) The court granted Teva's motion and dismissed the complaint with prejudice. (*Id.*)

### D.  Gioia v. Teva Pharmaceutical (the "Fourth State Case")

Undeterred, Gioia filed another complaint on January 27, 2025, just three days after her complaint against Teva was dismissed in the Third State Case, alleging once again that Teva "[h]alted Adderal [sic] production without warning, breaking FDA and CGMP laws and prevented the FDA from accounting for a 9 month barrency [sic] (of Adderal [sic]) Teva created for their own personal gain negligent to patient health as well as violating Consumer Protection Rights, Antitrust Laws, and Sherman Law in an attempt to unfairly monopolize the market and create a pay-for-delay. . . ." (ECF No. 10-9 at 2.) Teva filed a motion to dismiss the complaint with prejudice, which was followed by an opposition from Gioia, a reply by Teva, and an

unauthorized sur-reply by Gioia. (ECF No. 10-10 at 4.) Neither party requested oral argument, and none was held. (*Id*.)

In dismissing the complaint with prejudice, the court recited the following history of Gioia's efforts to litigate claims against Teva relating to an alleged shortage of Adderall in multiple, sequential actions:

> Plaintiff has filed three prior complaints against Defendant seeking recompense for the same alleged injury. Within Plaintiff's current complaint (MRS-L-488-25), she generally alleges that Defendant violated "FDA" laws, "cGMP Laws," "Consumer Protection Rights," "Antitrust Laws, and Sherman Law" by "creating a barrency (sic) of Adderal (sic) for over 8 months . . . without regard to patient consumers who need the medicine and without regards to the Adderal (sic) market." Plaintiff complaint seeks damages in the amount of $10,000,000 as a result of the harm she suffered as a result of Adderall not being "available for several months. . ."

> This history of Plaintiff's efforts to litigate her claim(s) that seeks damages from Defendant resulting from a shortage of Adderall is long and is recited within a Statement of Reasons supporting a January 24, 2025 Order issued by the Honorable David J. Ironson, J.S.C. (ret.), wherein Judge Ironson dismissed with prejudice Plaintiff's prior complaint (MRS-L-1776-24). Subsequent thereto, by order dated February 14, 2025, the Honorable Jonathan W. Romankow, J.S.C. denied Plaintiff's motion to vacate Judge Ironson's January 24, 2025 order of dismissal with prejudice. It is clear that the cause(s) of action within Plaintiff's current complaint (MRS-488-25) are substantially similar to her prior claims within MRS-1776-24 insofar as the claims arise out of the same circumstances in that Plaintiff again seeks damages from Defendant for ceasing the manufacture of Adderall and causing a shortage of same.

> This court also notes that Judge Ironson previously had dismissed with prejudice yet another complaint filed by Plaintiff under MRS-2079-23. In that matter, Plaintiff also sought damages from Defendant for stopping the manufacture of Adderall. In that matter, Defendant had filed a Notice of Motion to Dismiss Plaintiff's complaint pursuant to R. 4:6-2(e). In opposition to the Motion, Plaintiff argued, in part, that Defendant violated federal laws and regulations. Within an order dated August 8, 2024, Judge Ironson dismissed with prejudice MRS-2079-23.

> As previously noted by Judge Ironson, "[a] dismissal with prejudice 'constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial.'" *Feinsod v. Noon*, 261 N.J. Super. 82, 84 (App. Div. 1992)

(quoting *Velasquez v. Franz*, 123 N.J. 498, 507 (1991)). Res judicata is a term that refers to the doctrine barring relitigation of claims or issues that have already been adjudicated. *Velasquez*, 123 N.J. at 505.

As Judge Ironson previously has denied with prejudice, on two prior occasions, Plaintiff's claims for damages related to allegations that Defendant caused a shortage of Adderall, this court now dismisses Plaintiff's fourth complaint (MRS-L-488-25) with prejudice on the basis of Res Judicata.

Although unclear, to the extent that Plaintiff most recent complaint is asserting new causes of action against Defendant, it is obvious that those claims solely arise from the alleged shortage of Adderall caused by Defendant. As such, any new claims also are barred on the basis of the entire controversy doctrine. *See Brennan v. Orban*, 145 N.J. 282, 290 (1996) (confirming that entire controversy doctrine requires that all claims between parties "arising out of or relating to the same transactional circumstances . . . be joined in a single action."); Rule 4:30A ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine…"); *Oliver v. Ambrose*, 152 N.J. 383, 396 (1998) ("[W]here the plaintiff had sufficient information to have included the claims in the prior suit, mandatory joinder is not unfair" (citing *DiTrolio v. Antiles*, 142 N.J. 253, 274 (1995)).

Here, Plaintiff has filed multiple complaints seeking damages for a shortage of Adderall arising out of Defendant stopping the manufacture of same. Plaintiff cannot avoid the consequences of Res Judicata by merely filing a new complaint with altered claims that seeks relief for the same harm. Any such new claims are barred by the entire controversy doctrine.

Based upon the above, Defendant's motion to dismiss Plaintiff's complaint is GRANTED. Plaintiff's complaint is dismissed with prejudice.

(ECF No. 10-10 at 1–4 (internal footnotes omitted).)

## LEGAL STANDARDS

### I.      In Forma Pauperis

The Court has reviewed Gioia's IFP motions. (IFP Mot., ECF Nos. 2, 7–8.) Although the

financial information reported is sparse, the Court finds that Gioia is qualified by her financial

status to commence this action without the prepayment of the filing fee. Therefore, the IFP motions are granted for the limited purpose of this Order.

## II.      Sufficiency of the Pleadings

Where a plaintiff is proceeding IFP, 28 U.S.C. § 1915 instructs that "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). At the pleading stage, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)), *aff'd*, 569 U.S. 108 (2013).

This Court is required to construe pleadings "filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quotation marks omitted). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (quotation marks omitted).

Nevertheless, to avoid dismissal under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations in the complaint as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or

legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Central School Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

In addition, Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that a complaint "must contain . . . a short and plain statement of the grounds for the court's jurisdiction" and "of the claim showing that the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(1)-(2), (d)(1). Essentially, Rule 8 ensures that a complaint provides a defendant with sufficient notice of the claims against it. *See id.* "When a complaint fails to comply with [the Rule 8] requirements, the district court has the power, on motion or *sua sponte*, to dismiss the complaint or to strike such parts as are redundant or immaterial." *Celli v. Cole*, 699 F. App'x 88, 89 (2d Cir. 2017) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

Notwithstanding the latitude afforded to pro se litigants, pro se litigants are "not excuse[d] . . . from complying with the Federal Rules of Civil Procedure." *Gunter v. Carrion*, No. 09-cv-281, 2009 WL 10709657, at *1 (E.D.N.Y. Oct. 20, 2009) (alterations omitted); *see also Carl v. City of Yonkers*, No. 04-CV-7031, 2008 WL 5272722, at *5 (S.D.N.Y. Dec. 18,

13

2008) ("[T]he cases are legion that pro se status does not excuse a failure to follow clearly-enacted rules of court." (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995); *Edwards v. I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995)).

### III.   Res Judicata

"The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (internal quotation marks omitted). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021). Moreover, res judicata "applies to issues that were not raised in the prior action, if they could have been raised in that action . . . and applies even where new claims are based on newly discovered evidence, unless the evidence was fraudulently concealed or it could not have been discovered with due diligence." *Id*. (internal quotations omitted). Further, "res judicata applies to pro se plaintiffs whose claims in a second action are based on the same factual predicates presented in the first action." *Bey v. City of New York*, 454 F.App'x 1, 5–6 (2d Cir. 2011) (citing *Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205–06 (2d Cir 2002)). "A district court has not only the power but the obligation to dismiss complaints . . . on res judicata grounds when the litigation history triggers it." *Caldwell v. Pesce*, 83 F. Supp. 3d 472, 481 (E.D.N.Y. 2015) (citing *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)), *aff'd*, 639 F. App'x 38 (2d Cir. 2016).

### IV.    The Entire Controversy Doctrine and Claim Splitting

"New Jersey has an 'entire controversy doctrine,' which 'compels the parties, when possible, to bring all claims relevant to the underlying controversy in one legal action.'" *Am. Soc'y for the Prevention of Cruelty to Animals v. Lavalette*, No. 25-cv-5016, 2025 WL 3077761, at *3 (S.D.N.Y. Nov. 4, 2025) (quoting *Lockhart v. U.S. Bank Nat'l Ass'n*, 2017 WL 2709563, at *3 (D.N.J. June 22, 2017)). "[T]hat rule precludes only *successive* lawsuits involving related claims." *Lavalette*, 2025 WL 3077761, at *3 (emphasis added). "Pursuant to the entire controversy doctrine, parties may not assert claims that have previously been raised—or could have been raised—in a prior lawsuit." *Sanders*, 2021 WL 4392053 at 14 n. 14 (citing N.J. Ct. R. 4:30A ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine.")). The entire controversy "doctrine embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in those proceedings all of their claims and defenses that are related to the underlying controversy." *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 605 (2015).

Further, the Second Circuit instructs:

> Th[e] rule against claim splitting is based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times.

*LG Elecs., Inc. v. Wi-Lan USA, Inc.*, 623 F. App'x 568, 570 (2d Cir. 2015) (summary order) (quoting *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 73 (2d Cir. 2003) (internal quotation marks omitted)).

## V.   Litigation Injunction

The All Writs Act, 28 U.S.C. § 1651, empowers this Court to issue an injunction limiting vexatious litigation. *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 261 (2d Cir. 1999); *see also Matter of Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982) ("The equity power of a court to give injunctive relief against vexatious litigation is an ancient one which has been codified in the All Writs Statute, 28 U.S.C. s 1651(a) (1976)."); *see also In re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984) (a district court has "the power and the obligation to protect the public and the efficient administration of justice from [a vexatious litigant's] litigious propensities"). "[T]he traditional standards for injunctive relief, i.e. irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant." *In re Martin-Trigona*, 737 F.2d at 1262. Rather, the Second Circuit has identified five factors to be considered in restricting a litigant's access to the court system:

(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;

(2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?;

(3) whether the litigant is represented by counsel;

(4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and

(5) whether other sanctions would be adequate to protect the courts and other parties.

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019). In addition, the Court must provide a plaintiff with notice and an opportunity to be heard before imposing a filing injunction. *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (per curiam).

16

**DISCUSSION**

I.    **Claim Preclusion**

Res judicata (claim preclusion) bars re-litigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Sikorsky*, 136 F.4th at 62; *see also Blinkoff v. City of Torrington*, No. 23-717, 2025 WL 502041, at *1 (2d Cir. Feb. 14, 2025) (same). As is readily apparent, all three of these criteria are satisfied with respect to the claims Gioia brings in this case. The Second State Case was adjudicated on the merits between the same parties as the present action, and all the claims in the present action were, or could have been, raised in the Second State Case. Similarly, the Third State Case and the Fourth State Case were also dismissed with prejudice, were between the same parties, and the claims asserted in the present complaint "were, or could have been, asserted in the prior action[s]." *Silorsky*, 136 F.4th at 62. Although Gioia asserts that the "claims that were not included in the past complaint should not be barred" because "[t]hese were not included because I am pro-se and I do not have knowledge of Statutes and the law as a hired lawyer would be expected to" (ECF No. 12 at 7), her argument effectively immunizes pro se litigants from claim preclusion, which is contrary to the law in the Second Circuit. *See Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 F. App'x 52, 53–54 (2d Cir. 2008) (affirming the district court's dismissal of pro se litigant's complaint on claim preclusion grounds); *see also McKenzie v. Wilmington Sav. Fund Soc'y, FSB as Tr. of Standwich Mortg. Loan Tr. I*, No. 24-cv-7665, 2025 WL 2772854 (E.D.N.Y. Sept. 29, 2025) ("As a pro se claimant is not exempt from compliance with relevant rules of procedural and substantive law, the

17

doctrine of collateral estoppel and *res judicata* are equally applicable to pro se claimants.")
(internal quotations omitted) (italics in original).

Moreover, the entire controversy doctrine also precludes Gioia's claims against Teva.
Although Gioia raised some of her claims against Teva in the prior New Jersey proceedings, her
claims against Teva asserted for the first time in this lawsuit—including claims under "Federal
Antitrust Laws," the "Sherman Antitrust Act," and the "Dodd Frank Wall Street Reform and
Consumer Protection Act"—could have been raised in the underlying New Jersey proceedings
(whether the Second, Third, or Fourth State Cases), and thus the entire controversy doctrine
precludes those claims as well.

Accordingly, because Teva's liability for the alleged shortage of Adderall was already
litigated and decided on the merits, further litigation about that issue is precluded by res judicata
and the claims splitting doctrine. Importantly, "[t]he res judicata bar extends to all . . . claims
arising out of the same transaction or series of transactions . . . , even if based upon different
legal theories or seeking a different remedy." *Ricks v. Brown*, No. 20-cv-43, 2020 WL 5628969,
at *2 (W.D.N.Y. Sept. 21, 2020) (internal quotation marks and citation omitted). Thus, any other
claims that may liberally be construed from the Complaint arising out of Gioia's claimed
inability to access the drug Adderall are likewise precluded. Accordingly, the Complaint is
dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

## II.     The Claims Also Fail on Other Grounds

Apart from claim preclusion, the claims set forth in the Complaint fail as a matter of law.
Insofar as the Complaint brings claims pursuant to "Federal Antitrust Laws," the "Sherman

Antitrust Act," and the "Dodd Frank Wall Street Reform and Consumer Protection Act," such claims are not plausible.

To be sure, "the Sherman Act does not itself provide a private right of action." *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012); *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 519 (S.D.N.Y. 2013) ("At the threshold, [the] [p]laintiff cannot actually sue directly under the Sherman Act, 15 U.S.C. § 1, because 'Section 1 of the Sherman Act does not itself provide a private right of action.'" (quoting *In re Publ'n Paper Antitrust Litig.*, 690 F.3d at 62)). Rather, a private right of action "is established by section 4 of the Clayton Act, which authorizes private suits by 'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws.'" *In re Publ'n Paper Antitrust Litig.*, 690 F.3d at 62 (quoting 15 U.S.C. § 15). Given that the Complaint was filed pro se, the Court construes the Sherman Act claim to be brought under the relevant portions of the Clayton Act.

To prevail on a Clayton Act claim, "a private plaintiff 'must allege a combination or some form of concerted action between at least two legally distinct economic entities that constituted an unreasonable restraint of trade either per se or under the rule of reason.'" *Ruotolo*, 933 F. Supp. 2d at 519 (quoting *Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 103 (2d Cir. 2000)). "Additionally, 'a plaintiff must independently show "antitrust injury"'—also called 'antitrust standing'—because 'a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior.'" *Id.* (quoting *Primetime 24*, 219 F.3d at 103). "[C]ourts have carefully parsed antitrust standing in order to avoid counter-productive use of antitrust laws in ways that could harm competition rather than protecting it." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (cleaned up).

The Second Circuit instructs that:

> An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977). "The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation" because "[t]he antitrust laws . . . were enacted for 'the protection of competition, not competitors.'" *Id.* at 488–89 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) (emphasis added)); *see also Daniel v. American Bd. of Emergency Medicine*, 428 F.3d 408, 438 (2d Cir. 2005) (citing cases). Thus, "[t]he antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior." *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (emphasis in original).

*Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 290 (2d Cir. 2006).

Here, the Complaint fails to allege the kind of antitrust injury required for standing to pursue a private antitrust claim. (*See generally*, Compl.) Indeed, the allegations that Gioia suffered harm including "severe biopsychosocial disability and exacerbation of ADD/ADHD as well as severing career and financial endeavors and relationships (interpersonal, familial, [indecipherable])," "medical deterioration, emotional distress, and social impairment," as well as "[l]oss of financial endeavors, including interference with Plaintiff's professional and economic activities" (*Id.* ¶ II.3, 8(a)-(c)), are unique injuries to her and do not allege an injury to competition. *See*, *e.g.*, *Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir. 1994) ("It is now well settled that in order to have standing to prosecute private antitrust claims, plaintiffs must show more than that the defendants' conduct caused them an injury."); *Abbott Labs. v. Adelphia Supply USA*, 15-cv-5826, 2017 WL 5992355, at *9 (E.D.N.Y. Aug. 10, 2017) ("It is insufficient for a plaintiff to allege a personal injury 'causally linked' to an asserted antitrust violation." (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat Inc.*, 429 U.S. 477, 489 (1977))). Construing the allegations to "raise the strongest arguments they suggest," *McLeod v. Jewish Guild for the*

20

*Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (citation omitted), the Court also finds that the Complaint not only lacks sufficient allegations to support statutory standing for Gioia to bring an antitrust claim, but also fails to allege any facts to support a substantive antitrust violation because it fails to allege any joint or concerted action between distinct entities to restrain trade or commerce. *See Ramnarine v. Nationstar Mtge., LLC*, No. 19-cv-5544, 2019 WL 7038430, at *2 (E.D.N.Y. Dec. 20, 2019) (finding that plaintiff failed to allege a substantive antitrust violation where the pleadings did not "allege proof of joint or concerted action between Defendants").

Similarly, "there is no private right of action under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C.A. § 5538 (a)(2) (providing the Bureau of Consumer Financial Protection with the exclusive authority to enforce the Act's ban on unfair, deceptive, or abusive consumer practices)." *Ezekwo v. Specialized Loan Servicing*, No. 23-cv-1141, 2023 WL 2971502, at *3 (S.D.N.Y. Apr. 17, 2023). The Complaint points to no provision of that law that provides a private cause of action under the circumstances alleged, and the Court is not aware of any. *See generally*, Compl.; *see also Beider v. Retrieval Masters Creditors Bureau, Inc.*, No. 14-cv-6563, 2015 WL 7454119, at *5 (E.D.N.Y. Nov. 24, 2015) (recognizing that "courts have commonly declined to read private causes of action into provisions of Dodd-Frank that do not explicitly provide for them" and dismissing Dodd-Frank claims where the plaintiff did not "point to any language of the Act suggesting that a private cause of action does exist"); *Nguyen v. Bank of Am.*, No. 14-cv-1243, 2016 WL 74412, at *2 (E.D.N.Y. Jan. 6, 2016) (dismissing Dodd-Frank claims due to a lack of private right of action).

Thus, in the absence of any plausible claims for relief, the Complaint is dismissed pursuant to 28 U.S.C. 1915(e)(2)(b)(i)-(ii).

### III.   Litigation Injunction

Gioia's four state court cases together with her ten prior cases in this Court demonstrate a pattern of duplicative, vexatious, and harassing lawsuits. Given Gioia's litigation history, her continued filing of new complaints against the Defendant or their privies relating to the drug Adderall will not be tolerated. Although the instant case is Gioia's first in this Court concerning Adderall, her litigation history suggests that she may file yet another action.

Couts have an "obligation to protect the public and the efficient administration of justice from individuals who have a history of litigation entailing vexation, harassment and needless expense to other parties and an unnecessary burden on the courts and their supporting personnel." *Lau v. Meddaugh*, 229 F. 3d 121, 123 (2d Cir. 2000) (internal quotation marks, citations, and alteration omitted). Ultimately, a court must determine "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Eliahu*, 919 F.3d at 713–14 (quoting *Safir v. US Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)). Indeed, "[e]very paper filed with the . . . Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 U.S. 180, 184 (1989) (per curiam). "If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system." *Hong Mai Sa v. Doe*, 406 F.3d 155, 158 (2d Cir. 2005) (internal quotation marks omitted); *see also Edwards v. Barclays Services Corp.*, No. 19-CV-9326, 2020 WL 3446870, at *5 (S.D.N.Y. June 24, 2020) ("An injunction against future lawsuits is an available remedy in appropriate circumstances and has been applied where litigants file repeated

lawsuits relating to the same case") (internal quotation marks, citation, and modifications omitted).

Accordingly, because notice and an opportunity to be heard are required before a pre-filing injunction is imposed, *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998), the Court now orders Gioia to show cause in writing why a pre-litigation injunction should not be entered that would require her to seek the Court's permission prior to filing any further actions relating to the drug Adderall in this District. **Gioia shall, within fourteen (14) days from the date of this Order, show cause in writing why she should not be barred from filing any new action relating to the drug Adderall without prior leave of Court. Absent a timely response, the Court shall enter an Order so enjoining such filings.**

Further, Gioia is cautioned that Rule 11 of the Federal Rules of Civil Procedure applies to pro se litigants. *See Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and pro se litigants . . . ."). Should Gioia file another frivolous action, it is within the Court's authority to consider imposing monetary sanctions upon her. *See* Fed. R. Civ. P. 11.

### IV.    Leave to Amend

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. Cty. of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). For the reasons set forth above, amendment would be futile, and leave to amend is denied.

**CONCLUSION**

For the reasons provided above, the Court grants Gioia's motions to proceed IFP (ECF Nos. 2, 7–8) and dismisses the Complaint (ECF No. 1) pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii) and Federal Rule of Civil Procedure 12(b)(6). Gioia is ordered to show cause in writing within fourteen (14) days from the date of this Order why a pre-litigation injunction should not be entered that would require her to seek the Court's permission prior to filing any further actions relating to the drug Adderall in this District. Absent a timely response, the Court shall enter an Order so enjoining such filings.

The Clerk of the Court shall mail a copy of this Order to Gioia at her address of record and shall note such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
       June 26, 2026

                                        /s/ *Nusrat J. Choudhury*
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge

24